An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-190

Filed 15 July 2026

Surry County, No. 23CR301418-850

STATE OF NORTH CAROLINA

v.

DAVID RAY LUNSFORD, Defendant.

Appeal by Defendant from judgment entered 28 March 2024 by Judge Angela B. Puckett in Surry County Superior Court. Heard in the Court of Appeals 9 September 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Joseph Finarelli, for the State.*

> *William D. Spence for Defendant-Appellant.*

CARPENTER, Judge.

David Ray Lunsford ("Defendant") appeals from judgment entered after a jury found him guilty of one count of first-degree kidnapping, one count of first-degree rape, two counts of first-degree forcible sex offense, and one count of crime against nature. On appeal, Defendant argues the trial court erred by: (1) denying Defendant's motion to dismiss the charge of first-degree kidnapping; and (2) failing to intervene

during the State's closing argument. After careful review, we discern no error.

## I. Factual & Procedural Background

On 15 May 2023, a Surry County grand jury indicted Defendant for one count of first-degree kidnapping, one count of first-degree rape, two counts of first-degree forcible sex offense, and one count of crime against nature. On 25 March 2024, Defendant's case went to trial, and the evidence tended to show the following.

On 6 May 2023, seventeen-year-old Ann[1] drove herself to a public Greenway trail to jog. Upon her arrival at the Greenway, Ann parked her vehicle near the restroom and went inside. When she exited the restroom, Ann observed Defendant sitting at a picnic table nearby. Defendant was thirty-seven years old, had a "scraggly" beard, "did not look clean," and had a demeanor that "didn't seem right." When he saw Ann, Defendant commented on Ann's appearance, calling her "hot or attractive" or "something to that nature."

Defendant then approached Ann, who tried to walk away. Defendant followed Ann and continued to talk to her. Ann eventually stopped to talk to Defendant, and Defendant made a motion with his hand, slightly lifting his shirt. When Defendant did so, Ann observed a knife tucked into his waistline. Ann felt "trapped" upon seeing the knife, and she thought she "didn't have any other way to go, or [she] had no other options." So Ann walked with Defendant along the trail.

---

[1] Pseudonym used to protect the identity of the minor child and for ease of reading. *See* N.C. R. App. P. 42(b)(3) (2025).

Because Ann wanted to politely "get away" from Defendant, she told Defendant she wanted "to go to the gas station to get a drink." Defendant insisted on accompanying Ann to the gas station. Ann felt "very scared" and was afraid to tell him no. Thereafter, Defendant got in the front passenger seat of Ann's vehicle, and she drove them to the Grab & Go gas station. Ann "felt trapped" when Defendant got inside her vehicle.

When they arrived at the Grab & Go gas station, Defendant followed Ann inside. Ann continued to be polite to Defendant. Inside the gas station, Defendant stood close to Ann, and she did not feel like she could run away from him. Although Ann informed Defendant that she was a minor, Defendant insisted on purchasing alcohol for her with her money. Defendant purchased the alcohol, and they returned to Ann's vehicle.

Ann drove Defendant back to the trail, and they walked along the Greenway again. As they walked, Defendant insisted that Ann drink the alcohol. Defendant instructed Ann to pour the alcohol in her water bottle, so passersby would not know she was drinking alcohol. Ann was polite to Defendant because she thought it would "have been a lot worse if [she] would have defended [herself] or tried to go against [Defendant's] opinion or what he wanted." Ann poured the alcohol in her water bottle and continued to walk along the trail with Defendant.

As they walked, Ann discreetly captured photos of Defendant on her phone and sent them via Snapchat to her boyfriend to notify him of her location with Defendant.

When Defendant observed Ann on her phone, he appeared "frustrated" and "like . . . it was the last thing he wanted [her] to do." Even though she "didn't want to," Ann drank the alcohol. She "felt like that was [her] only option." At one point, Ann tried to "run or go to [her] car," but she slipped and cut her hand. Shortly thereafter, Defendant took Ann's keys from her hands even though she tried to stop him. Ann got in her vehicle with Defendant because she felt like "there wasn't another option."

As Defendant drove Ann's vehicle, Defendant told Ann that he wanted to go somewhere isolated. Defendant drove Ann to a Big Lot's parking lot, which "didn't have [ ] many people" around. Ann testified that the alcohol made her feel "fuzzy" and "cloudy[,]" and that she "was a little bit more slow reacting . . . ." After Defendant parked, he became "touchy" and "tried putting his hands on" Ann. Defendant touched her "between [her] legs" against her will. She asked him if he could "please not do that . . . ." Defendant ignored Ann and told her that he wanted to "f*** the s*** out of" her. Defendant kept touching Ann, and Ann tried to push him away. Defendant said he wanted her to do "things to him orally."

After he began touching Ann, Defendant unbuttoned his jeans. Defendant pulled his pants down and exposed his penis. Defendant told Ann that he wanted her "to give him what he wanted" and then forced her to touch his penis with her hand. Specifically, Defendant held Ann's hand with his hand and placed it on his penis. After forcing Ann to touch his penis, Defendant held her head and forced her to do "orally things to him." Defendant then touched Ann's vagina and removed her

- 4 -

tampon while forcing her to perform oral sex. At that time, Defendant had his knife inside Ann's vehicle.

Defendant stopped touching Ann when a person walked by Ann's vehicle. Ann did not believe she could have exited her vehicle at this time without being harmed by Defendant. Defendant then drove Ann to a second location because he wanted to go somewhere isolated. The second location was an area "around trees" with "running water." When they first arrived at the second location, Ann felt like she was "about to get killed."

After parking, Defendant began touching Ann again, and she asked him to stop several times. Defendant ignored Ann's repeated protests. Defendant pushed the passenger seat down and forced himself on top of Ann. Defendant forced his penis inside Ann's vagina. As Ann kept saying no, Defendant covered her mouth.

Defendant eventually stopped, got off Ann, and put his pants back on. Defendant drove them back to the Greenway. After Defendant and Ann returned to the public trail, Ann's boyfriend arrived in his truck and approached Defendant carrying a baseball bat. After almost getting into a physical altercation with Ann's boyfriend, Defendant walked away. Ann's boyfriend drove Ann in her vehicle to the car shop where he worked. Once at the car shop, Ann went into the bathroom and cried, and law enforcement arrived to speak to Ann. A deputy with the Surry County Sheriff's Office asked Ann whether she was sexually assaulted, and Ann "motioned

yes." An ambulance transported Ann to the hospital, where a nurse conducted sexual assault exams.

At trial, Defendant testified that Ann consented to traveling to various locations with him and to engaging in intercourse. At the close of the evidence, Defendant moved to dismiss the charges for insufficient evidence, which the trial court denied.

During the State's closing argument, the prosecutor made the following statements:

> Today you get to do something. . . . Please do not send him back to the Greenway. If you do, don't let your kids go for a jog. . . . Maybe those days of letting our kids go out and build forts and play football by themselves, maybe those days are over[.] . . . You can do something. One of Surry County's daughters has been hurt. . . . When I was ten or 11, I played football until it got dark. . . . My parents never once worried about me unless I was [not] home by curfew. . . . Why is that Greenway even there? To attract ne'er-do-wells or so that the people of Surr[]y County have a place to go, to get outdoors, to ride their bikes walk their dogs go for a jog, to clear their heads. . . . [Ann] is timid and sweet and polite and easily manipulated and easily controlled. . . . [Ann] still got kidnapped. . . . You saw what a sweet girl [Ann] is.

Defendant objected to the statement about going for a jog, which the trial court sustained. Defendant also objected to the football statement, which the trial court overruled. Defendant did not object to the other remarks, and the trial court did not intervene on its own accord.

The jury found Defendant guilty on all counts. The trial court sentenced Defendant to consecutive terms of imprisonment of 276 to 392 months for first-degree rape, 276 to 392 months for one count of first-degree forcible sex offense, 276 to 392 months for the second count of first-degree forcible sex offense, and a consolidated sentence of twenty-nine to forty-seven months for the first-degree kidnapping and crime against nature convictions. Defendant gave oral notice of appeal in open court.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2025).

## III. Issues

The issues are whether the trial court erred by: (1) denying Defendant's motion to dismiss the charge of first-degree kidnapping; and (2) failing to intervene during the State's closing argument.

## IV. Analysis

### A. Motion to Dismiss

Defendant argues the trial court erred by denying his motion to dismiss the charge of first-degree kidnapping because the State presented insufficient evidence that Ann was "removed from one place to another without her consent." We disagree.

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). " 'Under a de novo review, [this Court] considers the matter anew and freely substitutes its own

judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

With a motion to dismiss, " 'the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' " *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (quoting *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78–79, 265 S.E.2d 164, 169 (1980) (internal citation omitted).

The evidence must " 'be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom . . . .' " *State v. Winkler*, 368 N.C. 572, 574–75, 780 S.E.2d 824, 826 (2015) (quoting *Powell*, 299 N.C. at 99, 261 S.E.2d at 117). If the State presents "substantial evidence, whether direct or circumstantial, or a combination, to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *Id.* at 575, 780 S.E.2d at 826 (internal quotation marks and citations omitted). " 'Contradictions and discrepancies do not warrant dismissal of the case; rather, they are for the jury to resolve. Defendant's evidence, unless favorable to the State, is not

to be taken into consideration.' " *State v. Agustin*, 229 N.C. App. 240, 242, 747 S.E.2d 316, 318 (2013) (quoting *State v. Franklin*, 327 N.C. 162, 172, 393 S.E.2d 781, 787 (1990)).

First-degree kidnapping occurs when: (1) "[a]ny person who shall unlawfully confine, restrain or remove from one place to another, any other person 16 years of age or over without the consent of such person . . ."; (2) if the "confinement, restraint or removal is for the purpose of . . . facilitating the commission of any felony . . ."; and (3) the "person kidnapped either was not released . . . in a safe place or had been seriously injured or sexually assaulted . . . ." N.C. Gen. Stat. § 14-39(a)–(b) (2025).

Here, the trial court did not err in denying Defendant's motion to dismiss. *See Fritsch*, 351 N.C. at 378, 526 S.E.2d at 455. At trial, Ann consistently testified that she only accompanied Defendant to the various locations because she feared Defendant's knife. In addition, Ann stated that she did not feel as though she could run away from Defendant without being harmed. Viewing this evidence in the light most favorable to the State, *see Winkler*, 368 N.C at 574–75, 780 S.E.2d at 826, a "reasonable mind" could find that Ann felt threatened by Defendant and did not consent to going to the various locations with him, *see Smith*, 300 N.C. at 78–79, 265 S.E.2d at 169. Although Defendant testified that Ann consented to traveling to the various locations with him, this contradiction was properly left for the jury to resolve. *See Agustin*, 229 N.C. App. at 242, 747 S.E.2d at 318. Accordingly, the trial court did

not err by denying Defendant's motion to dismiss the charge of first-degree kidnapping. *See Fritsch*, 351 N.C. at 378, 526 S.E.2d at 455.

**B. Closing Argument**

Defendant next argues the trial court erred by not intervening during certain portions of the State's closing argument. Because he objected to some of the challenged statements, Defendant argues the trial court erred by overruling his second objection and by failing to intervene *ex mero motu* on the other statements. We disagree.

Generally, the purpose of a "closing argument is to provide the jury with a summation of the evidence . . . ." *State v. Jones*, 355 N.C. 117, 127, 558 S.E.2d 97, 103 (2002). "[T]rial counsel are granted wide latitude in the scope of jury argument, and control of closing arguments is in the discretion of the trial court." *State v. Soyars*, 332 N.C. 47, 60, 418 S.E.2d 480, 487 (1992).

Counsel, however, "may not become abusive, inject his personal experiences, express his personal belief as to the truth or falsity of the evidence or as to the guilt or innocence of the defendant, or make arguments on the basis of matters outside the record . . . ." N.C. Gen. Stat. § 15A-1230(a) (2025). Thus, "[t]he trial court has a duty, upon objection, to censor remarks not warranted by either the evidence or the law, or remarks calculated to mislead or prejudice the jury." *State v. Monk*, 286 N.C. 509, 516, 212 S.E.2d 125, 131 (1975). "In determining possible prejudice arising from improper arguments, we consider an allegedly improper statement in its broader

context, as 'particular prosecutorial arguments are not viewed in an isolated vacuum.'" *State v. Peterson,* 361 N.C. 587, 603, 652 S.E.2d 216, 227 (2007) (quoting *State v. Moseley*, 338 N.C. 1, 50, 449 S.E.2d 412, 422 (1994), *cert. denied*, 514 U.S. 1091, 115 S. Ct. 1815, 131 L. Ed. 2d 738 (1995)).

### 1. Football Statement

Defendant argues that the trial court erred in overruling his objection to the statement about football. We disagree.

"The standard of review for improper closing arguments that provoke timely objection from opposing counsel is whether the trial court abused its discretion by failing to sustain the objection." *Jones*, 355 N.C. at 131, 558 S.E.2d at 106. "A trial court may be reversed for abuse of discretion only upon a showing that its actions are 'manifestly unsupported by reason.'" *Davis v. Davis*, 360 N.C. 518, 523, 631 S.E.2d 114, 118 (2006) (quoting *Clark v. Clark*, 301 N.C. 123, 129, 271 S.E.2d 58, 63 (1980)).

Here, the trial court did not abuse its discretion in overruling Defendant's objection to the State's statement that "[m]aybe those days of letting our kids go out and build forts and play football by themselves, maybe those days are over[.] . . . You can do something. One of Surry County's daughters has been hurt." *See Jones*, 355 N.C. at 131, 558 S.E.2d at 106. Indeed, the prosecutor did not explicitly remark on Defendant's guilt but rather lamented about a lack of safety on the Greenway. Thus, the statement was not improper. *See* N.C. Gen. Stat. § 15A-1230(a). Accordingly, the trial court did not abuse its discretion by overruling Defendant's objection. *See Jones*,

355 N.C. at 131, 558 S.E.2d at 106; *Monk*, 286 N.C. at 516, 212 S.E.2d at 131.

### 2. Curfew Statement

Defendant failed to object to the remaining statements he challenges on appeal. Defendant next contends the trial court erred in failing to intervene *ex mero motu* on the prosecutor's statement about his curfew. We disagree.

It may be proper for the trial court to intervene *ex mero motu* to correct an unchallenged remark during closing arguments. *Monk*, 286 N.C. at 516, 212 S.E.2d at 131. In those instances, we review: "(1) whether the argument was improper; and, if so, (2) whether the argument was so grossly improper as to impede the defendant's right to a fair trial." *State v. Huey*, 370 N.C. 174, 179, 804 S.E.2d 464, 469 (2017). To be grossly improper, the argument must have "strayed far enough from the parameters of propriety that the trial court, in order to protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord . . . ." *Jones*, 355 N.C. at 133, 558 S.E.2d at 107. For example, a closing argument is grossly improper if the State calls a witness, opposing counsel, or a defendant a liar "when there has been no evidence to support the allegation." *State v. Hembree*, 368 N.C. 2, 19, 770 S.E. 77, 89 (2015) (internal quotation marks and citation omitted).

Here, the trial court did not err in failing to intervene *ex mero motu* to the State's remark that "[w]hen I was ten or 11, I played football until it got dark. . . . My parents never once worried about me unless I was [not] home by curfew." *See Monk*,

286 N.C. at 516, 212 S.E.2d at 131. In short, the prosecutor's experience playing football as a child did not infringe on Defendant's rights at trial, *see Jones,* 355 N.C. at 133, 558 S.E.2d at 107, like calling Defendant a liar would have, *see Hembree,* 368 N.C. at 19, 770 S.E.2d at 89. Thus, while the prosecutor improperly "inject[ed] his personal experiences" into the State's closing argument, *see* N.C. Gen. Stat. § 15A-1230, his remarks did not stray "far enough from the parameters of propriety" to warrant intervention, *see Jones,* 355 N.C. at 131, 558 S.E.2d at 107. Accordingly, based on the context of the trial, *see Peterson,* 361 N.C. at 603, 652 S.E.2d at 227, the trial court did not err, *see Monk,* 286 N.C. at 516, 212 S.E.2d at 131.

### 3. Name Statement

Defendant also asserts the trial court erred in failing to intervene *ex mero motu* on the State's remark that called him a derogatory name. We disagree.

If the State specifically refers to the defendant by a derogatory name in closing arguments, that statement may be grossly improper. *See, e.g., Jones,* 355 N.C. at 133, 558 S.E.2d at 107 (determining the State improperly referred to the defendant as "this quitter, this loser, this worthless piece of – who's mean . . . He's as mean as they come. He's lower than the dirt on a snake's belly"); *State v. Wyatt,* 254 N.C. 220, 222, 118 S.E.2d 420, 421 (1961) (holding the State improperly described defendants as "two of the slickest confidence men"); *State v. Tucker,* 190 N.C. 708, 713–14, 130 S.E. 720, 722 (1925) (concluding the State impermissibly said the defendants "look[ed] like . . . bootleggers"); *State v. Davis,* 45 N.C. App. 113, 114–15, 262 S.E.2d

329, 329–30 (1980) (explaining the State improperly called the defendant a "mean S.O.B.").

Here, the trial court did not err in failing to intervene *ex mero motu* to the prosecutor saying, "Why is that Greenway even there? To attract ne'er-do-wells or so that the people of Surr[]y County have a place to go, to get outdoors, to ride their bikes walk their dogs go for a jog, to clear their heads[?]" *See Monk*, 286 N.C. at 516, 212 S.E.2d at 131. Unlike the State in *Davis* calling the defendant a "mean S.O.B." or in *Jones* calling the defendant "worthless," the prosecutor here did not refer to Defendant specifically. *See Davis,* 45 N.C. App. at 114–15, 262 S.E.2d at 329–30; *Jones*, 355 N.C. at 133, 558 S.E.2d at 107. Instead, the State was referring to the general purpose of the Greenway and posed a rhetorical question to the jury about whether the Greenway was built to "attract ne'er-do-wells." Thus, even if the prosecutor specifically called Defendant a "ne'er-do-well," this statement was not the type of inflammatory name calling that is grossly improper. *See, e.g.*, *Jones*, 355 N.C. at 133, 558 S.E.2d at 107; *Wyatt,* 254 N.C. at 222, 118 S.E.2d at 421; *Tucker,* 190 N.C. at 713–14, 130 S.E. at 722; *Davis,* 45 N.C. App. at 114–15, 262 S.E.2d at 329–30. Accordingly, the trial court did not err. *See Monk*, 286 N.C. at 516, 212 S.E.2d at 131.

**4. Timidity Statement**

Defendant argues the trial court erred by failing to intervene *ex mero motu* on the State's statement about Ann's timidity and politeness. We disagree.

- 14 -

Although attorneys during closing arguments may not express their personal opinions, *State v. Jones*, 358 N.C. 330, 350, 595 S.E.2d 124, 137 (2007), "prosecutors are allowed to argue that the State's witnesses are credible[,]" *State v. Augustine*, 359 N.C. 709, 725, 616 S.E.2d 515, 528 (2005). An attorney also " 'can argue to the jury that they should not believe a witness[.]' " *State v. Golphin*, 352 N.C. 364, 455, 533 S.E.2d 168, 227 (2000) (quoting *State v. Locklear*, 294 N.C. 210, 217, 241 S.E.2d 65, 70 (1978)).

Here, the trial court did not err in failing to intervene *ex mero motu* on the State's remark that Ann "[wa]s timid and sweet and polite and easily manipulated and easily controlled." *See Monk*, 286 N.C. at 516, 212 S.E.2d at 131. Because the State could argue about the credibility of a witness, the State's remark was not improper, let alone grossly improper. *See Augustine*, 359 N.C. at 725, 616 S.E.2d at 528; *Huey*, 370 N.C. at 179, 804 S.E.2d at 469. The trial court, therefore, did not err. *See Monk*, 286 N.C. at 516, 212 S.E.2d at 131.

### 5. Statements about Ann

Defendant also appears to challenge the trial court's lack of intervention regarding two additional statements from the State during closing argument, which we decline to review.

Here, Defendant abandoned his arguments to the State's remarks about Ann being kidnapped and sweet. *See* N.C. R. App. P. 28(a) (2025) ("Issues not presented and discussed in a party's brief are deemed abandoned."). In Appendix B of his brief,

Defendant attached and flagged all the challenged statements made by the trial court but failed to argue or otherwise discuss the statements about Ann. Although counsel's annotations helped identify relevant passages, Defendant made no argument why the statements were grossly improper. *See e.g., State v. Knight*, 245 N.C. App. 532, 539, 785 S.E.2d 324, 331 (2016), *aff'd as modified*, 369 N.C. 640, 799 S.E.2d 603 (2017). By failing to analyze them, Defendant has abandoned these challenges. *See* N.C. R. App. P. 28(a).

## V. Conclusion

In sum, as the State presented substantial evidence that Ann did not consent to traveling with Defendant to the various locations, the trial court did not err by denying Defendant's motion to dismiss the charge of first-degree kidnapping. Additionally, the trial court did not abuse its discretion by overruling Defendant's objection to the State's remark during closing arguments and did not err by failing to intervene *ex mero motu* on the other challenged remarks.

NO ERROR.

Judges COLLINS and FLOOD concur.

Report per Rule 30(e).